STEVEN G. KALAR
Federal Public Defender
Northern District of California
ELIZABETH M. FALK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:    (415) 436-7706
Email:          elizabeth_falk@fd.org

Counsel for Defendant MURRAY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| United States of America, | **Case No.:** CR 19–400 MMC |
| Plaintiff, | **Sentencing Memorandum** |
| v. | **Hearing Date:**   August 4, 2020 |
| EUGENE MURRAY, | **Hearing Time:**   2:00 p.m. |
| Defendant. | |

### INTRODUCTION

Defendant Eugene Murray, through undersigned counsel, respectfully offers the following memorandum in support of his request for a time served sentence of imprisonment.

The time serviced sentence is appropriate for the following reasons: (1) the § 3553(a) factors militate in favor of a reduced sentence; (2) the government also recommends a time served sentence, (3) the more culpable co-defendant in this matter, Mr. Hernandez-Banegas, also received a time served sentence, and (4) to reduce the defendant's risk of catastrophic infection of Coronavirus Disease 2019 (COVID-19) given the confined conditions at Santa Rita Jail.

//

SECTION 3553(A) ANALYSIS

**1. The Nature and Circumstances of the Offense**

On August 1, 2019, Mr. Murray's co-defendant, Mr. Hernandez-Banegas, was approached by an unknown person looking to buy drugs. Mr. Murray handed Mr. Hernandez-Banegas a sock containing drugs. SFPD observed this transaction and moved in to arrest both men. When he was searched, Mr. Murray was found with additional bindles of crack and heroin. As the amounts in question were extremely small, the police reports do not reflect drug net weight.

As explained by SFPD and the government in its Sentencing Memorandum, Mr. Murray was the "user" in the transaction employed by Hernandez to hold drugs for him in order to mitigate Hernandez' risk:

> An emerging trend in this area is that numerous narcotics dealer will employ a narcotics user to hold narcotics for the dealer. The dealers will place the narcotics in certain containers that are easily distinguishable to them. 1 have seen narcotics dealers place narcotics into plastic bags, plastic canisters, pill bottles, cloth bags and especially socks. I have observed dealers in this area summon the user who is holding narcotics, obtain the container from them and
> then return whatever amount they do not wish to have on their person to this user. The user will then leave the immediate area of the dealer. The user will then return upon the request of the dealer to give them more of their narcotics. On the occasions where I have seen the dealers obtain more narcotics, I have seen the users placing the narcotics in a bag such as a shoulder bag or backpack. 1 have seen these users remove the bag and hand it to the dealer for them to look at the narcotics. I have also seen users continue to wear the backpack and allow the dealer to go through the bag white they are wearing the bag.

Gov. Discovery, Police Report at EM 39.

**2. The History and Characteristics of the Defendant**

Mr. Murray has been homeless for approximately 20 years, and has a significant alcohol abuse problem. He was living on the streets at the time this offense occurred. Per the Modified Criminal History only Report, Mr. Murray's last countable conviction was in 2000. The remainder of his record since that time has been parole violations and petty offenses.

**3. The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; To Afford Adequate Deterrence**

The requested sentence is appropriate in light of the totality of the circumstances and, thus,

reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, and serves as an adequate deterrence to criminal conduct. As the government represents, Mr. Murray is the less culpable party here, a drug user acting as a pawn on the street for a dealer. The sales observed by SFPD were less than $20. Mr. Murray would likely not have served any time for this offense had it been prosecuted in San Francisco Superior Court, as he is an older homeless defendant with a drug and alcohol abuse problem. Here, the defendant has already served 5 months in custody for the offense. It is sufficient punishment given the small quantities of money and drugs involved.

**4.     The Need for the Sentence Imposed To Protect the Public from Further Crimes of the Defendant**

Mr. Murray does not have a long record as a drug seller or offender here in San Francisco. He does not need additional jail time to learn his lesson – he has already pleaded guilty and come to terms with his wrongdoing in this case. The most important component of this sentence is supervised release, which will allow Mr. Murray to re-enter the community with support, treatment, and hopefully, housing assistance. The treatment component of the sentence will protect the public much more than further custody.

**5.     The Need for the Sentence Imposed To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Mr. Murray is over 60 years old and is a defendant at heightened risk for complications should he contract COVID-19. There is no reason to keep him in custody longer than the time he has already spent. As of March 18, 2020, the new strain of coronavirus that causes COVID-19, has infected over 17 million people, leading to at least 667,744 deaths worldwide.[1] On March 11, the World Health Organization officially classified COVIC-19 as a pandemic.[2] Governor Newsom declared a State of Emergency and both San Francisco and Alameda County are on the governor's watch list as counties where cases are rising, not falling. Moreover, the Santa Rita jail itself

---

[1] As of July 30, 2020, according to the Coronavirus Resource Center as tracked by the Johns Hopkins University of Medicine. Accessed at http://coronavirus.jhu.edu.
[2] *WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020) *at* https://bit.ly/2W8dwpS.

SENTENCING MEMORANDUM
*MURRAY*, CR 19–400 MMC

experienced a spike in cases on July 16, just two days after Mr. Murray was re-incarcerated there on the instant case.[3] On that day, 95 new cases were diagnosed at the jail; largely food and laundry workers who work in service of the entire jail population. These numbers are rising exponentially. With numerous confirmed cases in San Francisco and the entire Bay Area, we must take every necessary action to protect vulnerable populations and the community at large. This means the release from custody of non-violent, low level offenders such as Mr. Murray – particularly elderly inmates in his condition who are at heightened risk for complications from COVID-19.

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[4] An opinion piece in the New York Times describes these unique and pressing issues.[5] Inmates cycle in and out of detention facilities from all over the county, and people who work in the facilities including correctional officers, and care and service providers leave and return daily, without screening. Incarcerated people generally have poorer health than the general population, and even at the best of times, medical care in custody is (at best) limited.[6] Many people who are incarcerated also have chronic conditions, like diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[7]

Outbreaks of the flu regularly occur in jails and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[8] In China, officials have confirmed the coronavirus

---

[3] See https://www.mercurynews.com/2020/07/16/biggest-outbreak-of-coronavirus-reported-at-santa-rita-jail/
[4] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, at https://doi.org/10.1086/521910.
[5] *Our Courts and Jails Are Putting Lives at Risk*, Emily Bazelon, New York Times, March 13, 2020, available at https://www.nytimes.com/2020/03/13/opinion/coronavirus-courts-jails.html?searchResultPosition=1.
[6] Laura M. Maruschak et al. (2015). Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf
[7] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS.
[8] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge (Mar. 7, 2020) at

SENTENCING MEMORANDUM
*MURRAY*, CR 19–400 MMC

spreading at a rapid pace in Chinese prisons, counting 500 cases.[9]  Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[10] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[11] In the U.S. steps are already being taken in some jurisdictions to facilitate the release of elderly and sick prisoners and to reduce jail populations by discouraging the refusing the admission of individuals arrested on non-violent misdemeanor charges.[12]

At Santa Rita jail there have been weeks of flu outbreaks, with different units being quarantined on a regular basis and yet infections continuing to spread. Inmates are in tight quarters, even more so with the closure of North County jail. Access to personal hygiene items is limited with only those inmates that have certain means able to purchase commissary (better/more soap and other hygiene items). Additionally, the jail has now restricted all visits to the jail and no family, friends or even experts are allowed into the jail.

Santa Rita jail lacks even some basic medical care and certainly lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers and other

---

https://bit.ly/2TNcNZY.
[9] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020) *at* https://bit.ly/2vSzSRT.
[10] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at* https://cnn.it/2W4OpV7.
[11] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020) *at* https://apnews.com/af98b0a38aaabedbcb059092db356697.
[12] In New York Brooklyn District Attorney Eric Gonzalez, joined by public health experts, has asked Governor Cuomo to grant emergency clemencies to elderly and sick prisoners (Sarah Lustbader, *Coronavirus: Sentenced to COVID-19*, The Daily Appeal (Mar. 12, 2020) *at* https://theappeal.org/sentenced-to-covid-19/.); Cuyahoga County (Ohio) is holding mass pleas and bail hearings to reduce the current jail population (https://www.cleveland.com/court-justice/2020/03/cuyahoga-county-officials-will-hold-mass-plea-hearings-to-reduce-jail-population-over-coronavirus-concerns.html); Mahoning County (Ohio) jail is refusing all non-violent misdemeanor arrestees (https://www.wkbn.com/news/coronavirus/mahoning-county-jail-refusing-some-inmates-due-to-coronavirus-outbreak/); see also Collin County (TX) (https://www.dallasnews.com/news/public-health/2020/03/12/facing-coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bring-petty-criminals-to-jail/);

care and service providers who enter the facility.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into Santa Rita jail and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and low sanitary conditions. If COVID-19 continues to find its way into the jail, it is going to spread like wildfire. The medical care in the jail is subpar in the best of times; we can only imagine how catastrophic it will be if there is a greater stress on the system.

Put simply, in light of this pandemic there is no need for Mr. Murray to remain in custody where he faces greater risks to his physical health.

**6.    The Kind of Sentences Available**

Here, the Court may impose any sentence up to 20 years' imprisonment, life-time supervised release, a $1,000,000 fine, and a $100 special assessment. A minimum term of three-years' supervised release is required.

**7.    The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant as Set Forth in the Guidelines**

   **A.    Mr. Murray's Proposed Guideline Calculations**

```
Base Offense Level, USSG § 2D1.1(c)(14) ......................................12
Acceptance of Responsibility, USSG § 3E1.1(a) & (b) ....................–2

Total Offense Level...........................................................................10
Criminal History Category ................................................................II
Sentencing Guideline Range ......................................................... 8-14
Mr. Murray's Recommendation .......................time served (5 months)
```

**8.    Unwarranted Sentencing Disparity**

While the requested sentence is a departure from the guideline range, the departure is *di minimis* when considering the conduct. Additionally, the sentence is in accord with similarly situated defendants engaged in similar conduct swept up in the Tenderloin Drug initiative.

Here, Mr. Murray had a limited function and extremely limited involvement—he is even lower on the totem pole than a street level dealer. He had no ability to dictate the price or terms of the sale. He worked for the actual dealer and was charged with holding the drugs only.  He was not responsible for packaging, delivering, or controlling what Hernandez sold.  Hernandez was sentenced by this Court to time served for his part in the crime, which was approximately 244 days (a little over

8 months).  Given Hernandez' approximate 8 month sentence, a 5 month sentence for Mr. Murray is more than sufficient.

**9.    Restitution**

There is no need for an order of restitution in this case.

**CONCLUSION**

The facts before the Court establish compelling reasons to impose a sentence below the guideline range.  Mr. Murray accordingly asks the Court to sentence him to a term of imprisonment of time served (approximately 5 months).

Dated:      July 30, 2020                                      Respectfully submitted,

                                                                              STEVEN G. KALAR
                                                                              Federal Public Defender
                                                                              Northern District of California

                                                                                           /S
                                                                              ELIZABETH M. FALK
                                                                              Assistant Federal Public Defender

SENTENCING MEMORANDUM
*MURRAY*, CR 19–400 MMC

7